IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:21-cv-00264-MR

| | |
|---|---|
| SHAMEKA MONEE JETER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> KILOLO KIJAKAZI, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 13] and Defendant's Motion for Summary Judgment [Doc. 14].

## I.  BACKGROUND

On May 30, 2019, the Plaintiff, Shameka Monee Jeter ("Plaintiff"), filed an application for supplemental security income under Title XVI of the Social Security Act (the "Act"), alleging an onset date of May 6, 2019. [Transcript ("T") at 59]. The Plaintiff's claims were initially denied on October 21, 2019, [id. at 93], and again denied upon reconsideration on February 11, 2020, [id. at 107]. On the Plaintiff's request, a hearing was held on October 22, 2020

before an Administrative Law Judge ("ALJ"). [Id. at 15]. On December 3, 2020, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 15-24].

On April 2, 2021, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. Bird v. Comm'r Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek

2

v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional

3

investigation and explanation. Mills v. Berryhill, No. 1:16-cv-00025-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

### III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to

4

step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At

5

step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Mascio, 780 F.3d at 635; see also 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 30, 2019, the date that the Plaintiff submitted her application for benefits. [T. at 17]. At step two, the ALJ found that the Plaintiff has the following severe impairments: "obesity; scoliosis; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder; and panic disorder." [Id. at 18]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id.]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, has the RFC:

> [T]o perform light exertional work as defined in 20 C.F.R. 416.967(b) except with the option to sit for 10 minutes after every 1 hour of standing as long as she is not off task or away from the workstations; no climbing of ladders, ropes, or scaffolding; occasional climbing of ramps or stairs, stooping, kneeling, crouching, and crawling; frequent balancing; likely to be absent, arrive late, or leave early 1 day per month on a consistent basis due to symptoms of pain; simple, routine, and repetitive tasks in a low stress work environment; occasional interaction with co-workers and supervisors; and no interaction with the public.

[Id. at 20].

At step four, the ALJ identified the Plaintiff's past relevant work as a childcare worker. [Id. at 23]. The ALJ determined, however, that the Plaintiff is "unable to perform past relevant work as generally or actually performed." [Id.]. At step five, the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, the Plaintiff is able to perform jobs existing in significant numbers in the national economy, including office assistant, mail room clerk, and merchandise marker. [Id. at 23-24]. The ALJ therefore concluded that the Plaintiff has not been "disabled" as defined by the Act since May 30, 2019, the date that the Plaintiff filed for benefits. [Id. at 24].

## V. DISCUSSION[1]

As one of her assignments of error, the Plaintiff argues that "[t]he ALJ erred by failing to adequately account for Ms. Jeter's moderate limitations in 'concentrating, persisting, or maintaining pace' when forming her RFC." [Doc. 13-1 at 9].

Social Security Ruling 96-8 explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2] SSR 96-8p; see also Mascio, 780 F.3d at 636 (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing, or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

When a plaintiff's claim is based in whole or in part on mental health impairments, the Social Security Rules and Regulations (the "Regulations") require an in-depth review and analysis of the plaintiff's mental health history. The Regulations set forth a mechanism for this review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders [L]istings." SSR 96-8p, 61 Fed. Reg. at 34,447. Paragraph B of the Listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits her functioning. These criteria represent the areas of mental functioning a person uses in the performance of gainful activity. 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.00A. The paragraph B criteria include the following: "[u]nderstand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id.; 20 C.F.R. § 404.1520a(c)(3). The ALJ uses the special technique to "evaluate the severity of mental impairments … when Part A of the Listing of Impairments is used." 20 C.F.R.

9

Case 3:21-cv-00264-MR   Document 17   Filed 08/16/22   Page 9 of 16

§§ 404.1520a(a), 416.920a(a). The special technique is performed as follows:

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s) …. If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.

Id. at §§ 404.1520a(b)(1), 416.920a(b)(1). Thus, "[t]he regulation specifically provides that the ALJ must document all of the special technique's steps." Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 659 (4th Cir. 2017) (citing 20 C.F.R. § 404.1520a(e)(4)).

In addition to following the special technique, an ALJ must formulate the RFC in light of a claimant's physical and mental impairments. Rule 96-8p provides:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and

10

> summarized on the [Psychiatric Review Technique Form].

SSR 96-8p, 61 Fed. Reg. at 34,477.

Further, the Fourth Circuit has instructed that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the [claimant] to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (internal quotation marks omitted). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. However, there is no per se rule that an ALJ must "always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). Rather, an ALJ must explain why a limitation to simple, routine tasks in the RFC accounts for a claimant's moderate limitations in maintaining concentration, persistence, or pace. See id.; see also Kempton v. Kijakazi, No. 1:20-cv-00114-MR, 2021 WL 5242886, at *5 (W.D.N.C. Nov. 10, 2021).

Here, at step three, the ALJ found that the Plaintiff has moderate limitations in "concentrating, persisting, or maintaining pace." [T. at 19]. The ALJ further stated that:

> Reports of moderately depressed mood, sleep disturbance, anhedonia, panic attacks, and anxiety supports significant limitation in this area (4F/4). In

11

> spite of these limitations, however, the claimant reported she is able to prepare[] simple meals, drive, pay bills, count change, and finish what she starts (3E/3-6). The undersigned also notes the claimant had no difficulties in answering and understanding the questions posed to her at the hearing, which is also indicative of an ability to follow instructions and maintain an acceptable level of concentration to perform at least simple tasks. Therefore, she has a moderate limitation.

[Id.].

The ALJ then acknowledged that the limitations identified at steps 2 and 3 of the sequential evaluation process are "not a residual functional capacity assessment," and "[t]he mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment of the areas of mental functioning." [Id.].

When conducting the RFC assessment, the ALJ did not discuss the Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace, and she did not include any such limitation in the Plaintiff's mental RFC. [See id. at 20-23]. Instead, the Plaintiff's mental RFC provides only that she is limited to "simple, routine, and repetitive tasks in a low stress work environment; occasional interaction with co-workers and supervisors; and no interaction with the public." [Id. at 20]. The ALJ failed to explain, however, how these limitations in the RFC also account for the Plaintiff's moderate

limitations in concentrating, persisting, and maintaining pace and why additional limitations are not necessary.

The Defendant argues that the ALJ relied on the prior administrative findings of the State agency psychological consultants in formulating the Plaintiff's mental RFC. [Doc. 15 at 11]. The State agency psychological consultants concluded that the Plaintiff is able to maintain concentration, persistence, and pace for simple, routine, and repetitive tasks. [T. at 69, 84]. When discussing the opinions of the psychological consultants, the ALJ stated only that:

> The prior administrative medical findings of the psychological consultants are partially persuasive (1A/10-12; 3A/11-13). *These consultants found the claimant could perform simple, routine, and repetitive tasks in a low stress setting with limited social interaction.* These findings are generally consistent with panic attacks, mood swings, depressed and anxious mood, and sleep disturbance. However, the consultants did not provide specific social interaction limitations and this part of their findings is, therefore, vague. Accordingly, these prior administrative medical findings are partially persuasive.

[Id. at 22] (emphasis added). Critically, the ALJ's assessment did not include the consultants' specific finding that the Plaintiff can *maintain concentration, persistence, and pace* to carry out simple, routine, and repetitive tasks in low stress environments with limited social interaction. Accordingly, the ALJ failed to "build an accurate and logical bridge" from the consultants' findings

13

to her conclusion in the RFC that the Plaintiff needs no additional limitation related to concentration, persistence, and pace. Monroe, 826 F.3d at 189.

The Defendant also argues that the ALJ accounted for the Plaintiff's moderate limitations in maintaining concentration, persistence, and pace by citing to other evidence in the record. For example, the Defendant notes that the ALJ cited to evidence showing the Plaintiff's ability to complete tasks, recall information, and manage her household; the Plaintiff's "symptoms of depressed mood, crying spells, sleep disturbance, anhedonia, panic attacks, mood swings, and generalized anxiety, and examination findings of anxious and depressed mood"; and the Plaintiff's other examination findings of "normal mood, as well as normal speech, behavior, judgment, insight, thought content, cognition, memory and attention." [Doc. 15 at 10-11]. In each of those examples, however, the ALJ merely cited to evidence in the record and made conclusory statements that such evidence supports the ALJ's conclusions without actually explaining how that evidence relates to the Plaintiff's mental RFC or the Plaintiff's moderate limitations in maintaining concentration, persistence, and pace. [See T. at 19, 21-22].

The Defendant further argues that the ALJ accounted for the Plaintiff's moderate limitations in maintaining concentration, persistence, and pace by including in the RFC that the Plaintiff is "likely to be absent, arrive late, or

14

Case 3:21-cv-00264-MR   Document 17   Filed 08/16/22   Page 14 of 16

leave early 1 day per month on a consistent basis due to symptoms of pain." [See Doc. 15 at 12; see also T. at 20]. This conclusion, however, is explicitly related to the Plaintiff's physical impairments. [See T. at 20, 21]. Even if the ALJ's RFC conclusion regarding the Plaintiff's attendance and punctuality was intended to account for the Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace, the ALJ again failed to explain how this conclusion accounts for such mental limitations.

The ALJ's decision is "sorely lacking in the analysis" necessary for the Court to meaningfully review the ALJ's conclusions. Mascio, 780 F.3d at 636-37. While the ALJ recited certain evidence in the record, "it is not sufficient for an ALJ to simply recite *what* the evidence is." Mills, 2017 WL 957542, at *4. Instead, an RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion . . ." Mascio, 780 F.3d at 636 (quoting SSR 96-8p).

A "reviewing court cannot be left to guess as to how the ALJ arrived at [her] conclusions." Mills, 2017 WL 957542, at *4. As such, this matter must be remanded because the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion." Monroe, 826 F.3d at 189.

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 743 F.3d at 295. On remand, the ALJ's decision should include a narrative discussion of the evidence, as required by SSR 96-8p, explaining how she reconciled that evidence to her conclusions. In light of this decision, the Plaintiff's other assignment of error need not be addressed at this time but may be addressed on remand.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 13] is **GRANTED,** and the Defendant's Motion for Summary Judgment [Doc. 14] is **DENIED.** Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED,** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: August 16, 2022

Martin Reidinger
Chief United States District Judge